Gary P. Naftalis
Michael S. Oberman
Alan R. Friedman
David S. Frankel
Robin M. Wilcox
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
*Attorneys for Plaintiff Rajat K. Gupta*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

RAJAT K. GUPTA,

        Plaintiff,

v.

SECURITIES AND EXCHANGE COMMISSION,

        Defendant.

------------------------------------x

11-cv-

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL**

Rajat K. Gupta, for his complaint against the Securities and Exchange Commission (the "Commission"), alleges as follows:

### Introduction

1. Mr. Gupta brings this action for declaratory and injunctive relief to prevent the Commission from violating Mr. Gupta's statutory and due process rights, including by applying retroactively the remedy provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. Law 111-203, 124 Stat. 1376 ("Dodd-Frank"). Relying on Dodd-Frank, the Commission seeks, among other things, civil penalties from Mr. Gupta in an administrative proceeding rather than a federal court action—an approach that the Commission has not taken against any non-regulated person other than Mr. Gupta. In so doing, the

Commission is unfairly and unconstitutionally singling out Mr. Gupta. This is the first case where retroactive application of Dodd-Frank would deprive a defendant of his right to a jury trial and other procedural safeguards as well as his access to federal court. At the same time, the Commission has filed *all* of its Galleon-related cases against at least 27 other defendants in *this* Court.

2. Mr. Gupta denies all allegations of wrongdoing and stands ready to mount a defense against each and every one of the Commission's charges. Yet under current Commission rules, Mr. Gupta would be deprived of a jury trial, the right to use the discovery procedures of the federal court to shape his defense, and the protections of the Federal Rules of Evidence which were crafted to bar unreliable evidence. These are not abstract rights; they are the practical and critical consequences of the Commission's attempt to apply Dodd-Frank retroactively. The Commission has already deprived Mr. Gupta of protections owed to him, when the Staff of the Enforcement Division invited him to make a "Wells submission" setting out a defense without informing him (and thereby inviting him to address) the intended choice of an administrative proceeding over a federal court action. There is, moreover, no public record of the Commission itself having given due consideration to the submission—the whole purpose of a Wells submission. Mr. Gupta comes before the very Court the Commission seeks to avoid and respectfully asks for judicial relief.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§1331, 1337, 1346, 1361 and 2201, and 5 U.S.C. § 702. Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (e).

### Mr. Gupta's Background

4. Mr. Gupta—who currently resides in Connecticut—was born in Kolkata, India in 1948, the son of a teacher at a Montessori school and a journalist and prominent freedom fighter. After obtaining a Bachelor of Technology degree in Mechanical Engineering from the Indian Institute of Technology, Delhi, and an M.B.A. from Harvard Business School, he joined McKinsey & Company, the premier global strategy consulting firm, in 1973, rising to become the firm's Managing Director Worldwide in 1994. He led the firm for nine years, until 2003, and then served as Senior Partner Worldwide from 2003 to 2007. Following his retirement from McKinsey and before the adverse publicity triggered by the Commission's filing, Mr. Gupta served on several public company boards as an outside director. He is not a regulated person under the federal securities laws. He has devoted approximately half of his time to a number of significant public service commitments, with a particular focus on improving public health and welfare (especially HIV and malaria), education and global trade and investment.

### The Order's Allegations and the Commission's Avoidance of Federal Court

5. On March 1, 2011, the Commission issued against Mr. Gupta its ORDER INSTITUTING PUBLIC ADMINISTRATIVE AND CEASE-AND DESIST PROCEEDINGS PURSUANT TO SECTION 8A OF THE SECURITIES ACT OF 1933, SECTIONS 15(b) AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934, SECTION 203(f) OF THE INVESTMENT ADVISERS ACT OF 1940, AND SECTION 9(b) OF THE INVESTMENT COMPANY ACT OF 1940 (the "order"). By this order, the Commission commenced an administrative proceeding against Mr. Gupta before an Administrative Law Judge of the Commission seeking, among other relief, civil penalties.

KL3 2821257.1

6. In seeking this relief, the Commission specifically cited to, and relied on, Dodd-Frank, which became law on July 21, 2010, even though all of the conduct alleged occurred before that date.

7. Section 929P of Dodd-Frank amended Section 8A of the Securities Act of 1933, Section 21B(a) of the Securities Exchange Act of 1934, Section 9(d)(10 of the Investment Company Act of 1940 and Section 203(i)(1) of the Investment Advisers Act of 1940 to permit the Commission prospectively to seek civil penalties against non-regulated persons in administrative cease-and-desist proceedings under those statutes. Dodd-Frank contains no expression or implication of Congressional intent that the civil penalties provisions of Dodd-Frank be applied retroactively. Section 4 of Dodd-Frank, instead, provides that "[e]xcept as otherwise specifically provided in this Act or the amendments made by this Act, this Act and such amendments shall take effect 1 day after the date of enactment of this Act." Yet, without retroactive application of Dodd-Frank, there is no doubt that the Commission could seek civil penalties against Mr. Gupta only through a plenary action in a federal district court.

8. The order alleges that Mr. Gutpa engaged in an "insider trading scheme" (Order ¶ 3) by providing "material nonpublic information that he obtained in the course of his duties as a member of the Boards of Directors of The Goldman Sachs Group, Inc. ('Goldman Sachs') and The Procter & Gamble Company ('Procter & Gamble') to Raj Rajaratnam ('Rajaratnam'), the founder and a Managing General Partner of the hedge fund investment adviser Galleon Management, LP ("Galleon")." (Order ¶ 1). Mr. Rajaratnam has not been charged by the Commission with any violations relating to his trading in Goldman Sachs or Procter & Gamble. The events alleged in the order took place between June 2008 and January

KL3 2821257.1

2009, at least 1½ - 2 years before Dodd-Frank. Mr. Gupta unequivocally denies all of the charges.

9. Mr. Gupta has an impeccable reputation for integrity and honesty, earned over the course of his nearly forty years in private and public life—including, most significantly, during his nine-year tenure as Managing Director Worldwide of McKinsey. He has devoted his professional life to guarding and maintaining the most sensitive confidential and proprietary information of his clients, which included many of the largest multinational corporations and government institutions in the world. There is no plausible reason why Mr. Gupta would have deviated from a lifetime of probity and a career dedicated to safeguarding corporate confidences in favor of engaging in the significant and aberrational wrongdoing alleged in the order.

10. The Commission could not carry its burden of proving to a jury either (i) that Mr. Gupta provided material nonpublic information to Mr. Rajaratnam, or (ii) that he acted with the requisite scienter or stood to obtain (or in fact obtained) any benefit from the alleged disclosures—both essential elements of an insider trading charge. The order does not—and cannot—allege that Mr. Gupta himself traded on or in any way profited from insider information as part of a quid pro quo for supplying such information. Nor does the order identify any direct evidence that Mr. Gupta conveyed material, nonpublic information about Goldman Sachs or Procter & Gamble. The Commission's case thus rests on (i) the occurrence of certain phone calls between Mr. Gupta and Mr. Rajaratnam (without direct evidence of the content of those calls, and without consideration of the entire course of dealing between the two men) and subsequent trading by Mr. Rajaratnam; and (ii) statements by Mr. Rajaratnam, embedded within multiple levels of hearsay, referring to unnamed "sources" at Goldman Sachs and Procter & Gamble. The order exposes a flawed case premised in large part on unreliable evidence being

used in an attempt to bring down a man of sterling reputation and remarkable achievements without the procedural safeguards historically accorded to all persons similarly charged.

### The Commission's Disparate and Unlawful Treatment of Mr. Gupta

11. Currently in this Court, Mr. Rajaratnam is on trial for criminal charges brought against him by the U.S. Attorney for the Southern District of New York; that action, 1:09-CR-01184-RJH, was commenced on October 15, 2009. In addition, the Commission has commenced civil actions in this Court (both before and *after* enactment of Dodd-Frank) against at least 27 persons allegedly related to Mr. Rajaratnam and Galleon (including Mr. Rajaratnam). All of those actions allege insider trading and seek civil penalties. Almost all of them are pending before the same District Judge as "related" cases under Rule 15 of Court's Rules for the Division of Business among District Judges. If brought in this Court, the case against Mr. Gupta would in the normal course be treated as related to those cases.

12. In issuing its order against Mr. Gupta, the Commission is attempting to recover civil penalties from him within the agency structure of the Commission and not by jury trial in this Court premised on alleged activity occurring *before* enactment of Dodd-Frank. The order represents not just the first Galleon-related proceeding that the Commission has brought outside of federal court; the order represents the first, and so far only, time the Commission has sought in a litigated insider trading case civil penalties against a non-regulated person such as Mr. Gupta administratively. The day before the order, the Commission brought suit in federal court charging outside directors of a public company with recklessly ignoring, and thereby facilitating, securities fraud violations by the CEO and other members of senior management, all based on pre-Dodd Frank conduct. And soon *after* the order, the Commission commenced an insider trading action (unrelated to Galleon) in this Court.

- 6 -

13. At least one Commissioner has noted that any retroactive application of Dodd-Frank would pose significant legal questions and fairness issues. In a February 4, 2011 speech, Commissioner Kathleen L. Casey noted that Dodd-Frank presents substantial retroactivity issues for the Commission; pointed out that among the provisions which posed retroactivity issues was Section 929P's grant of authority to impose civil money penalties in all cease-and-desist proceedings; suggested that the Commission, guided by notions of fairness and a respect for the principle of anti-retroactivity, could "elect to stand comfortably behind the line of legality in order to ensure that it does not inadvertently cross it;" and urged the Staff, "in the current environment" in which "the Commission is under tremendous public and media pressure to 'hold Wall Street accountable,'" not to "embrace toughness at the expense of fairness." *See* Commissioner Kathleen L. Casey, Address to Practising Law Institute's SEC Speaks in 2011 Program (February 4, 2011).

14. The Commission is treating Mr. Gupta differently from all other non-regulated persons from whom it has sought civil penalties for alleged insider trading by depriving Mr. Gupta of the most fundamental rights for defending against insider trading charges. The Commission seeks to try him administratively, without first adopting rules affording a respondent protections equivalent to those in federal court, and the Commission so far has failed even to address whether its existing rules of procedure should be revised before attempting to invoke the new power to seek civil penalties provided by Dodd-Frank. Instead of having the claims determined by a jury, Mr. Gupta faces an administrative proceeding where appellate review in the first instance is by the Commission itself, before any judicial review. Mr. Gupta would be forced to meet an accelerated schedule that excludes depositions and other discovery essential to a defense against insider trading charges. The administrative

proceeding—by denying the opportunity to conduct full discovery—hampers the ability to test and challenge the inferences to be drawn from conversations and phone records, the very type of "evidence" on which insider trading cases—including this one—are based.

15. Additionally, in an administrative setting, Mr. Gupta would be deprived of guaranteed application of the Federal Rules of Evidence which preclude unreliable evidence—such as multiple layers of hearsay evidence that the Commission would seek to offer in an administrative proceeding. As a practical matter, the combination of multiple hearsay evidence offered by the Commission and constricted discovery for Mr. Gupta lowers the burden for the Commission to prove its allegations. Being consigned to an administrative process would also impede Mr. Gupta's ability to seek indemnification or contribution, thereby unfairly enhancing the magnitude of the amount to which he would be exposed. Taken together, these changes resulting from retroactive application of Dodd-Frank impose new legal consequences on Mr. Gupta even though arising from pre-Dodd-Frank conduct.

16. Against the history of Galleon-related actions for civil penalties already brought in this Court, there is no benign and non-discriminatory explanation for the Commission's applying Dodd-Frank retroactively against Mr. Gupta, or more generally for filing the action against him administratively, rather than in federal court, as it has invariably done with similarly situated defendants. To the contrary, the only plausible inference is that the Commission is proceeding how and where it is against Mr. Gupta for the bad faith purpose of shoring up a meritless case by disarming its adversary.

KL3 2821257.1

## The Compelling Need for Judicial Relief

17.     Mr. Gupta has commenced this action in prompt response to the order, which affords him limited time to answer and to prepare for the administrative hearings and as a practical matter no viable administrative process to obtain a fair resolution of the retroactivity issue instinct in the order. In these circumstances, the Court should address the merits of this Complaint without requiring Mr. Gupta to first challenge the order administratively.

18.     More specifically, exhaustion of administrative remedies should be excused in this case because the government interests that might be served by exhaustion do not outweigh the interests to be served by immediate judicial review of the legal issues being presented. Mr. Gupta has compelling need for immediate judicial review: He would be forced to expend time and money in an administrative appeal process—while his public image is being tarnished—with no assurance that the administrative proceeding against him would be stayed by the Commission pending agency determination of the retroactivity issue. The scope of the Commission's statutory authority is strictly a legal issue; no factual development or application of agency expertise will aid the Court's decision. Nor will a decision by the Court invade the field of commission expertise or discretion. The statutory interpretation and constitutional claim in this case are the type of issues that courts regularly address and are more expert in adjudicating than agencies. And because this is the first case in which the Commission is attempting to apply Dodd-Frank's civil penalties amendments retroactively, there are strong jurisprudential reasons to adjudicate the legality of the Commission's authority now. A judicial determination would also enhance judicial efficiency if Mr. Gupta prevails. The Commission assuredly would bring a plenary action against Mr. Gupta should its administrative proceeding be

enjoined, and that action—if brought sooner rather than later—could be more easily coordinated with the Galleon-related actions pending in this Court.

19. Administrative review of the order, in contrast, would be futile. The Commission's order has all of the markings of a strategic decision, and it is a foregone conclusion that the Commission would decline to change course. Assuming it adhered to its own procedures, the Commission itself approved of this choice of forum. The Commission has already acted arbitrarily against Mr. Gupta: The Staff and the Commission effectively deprived Mr. Gupta of a full and fair Wells submission process.

20. Counsel for Mr. Gupta emailed to the Staff of the Enforcement Division a 35-page Wells submission on behalf of Mr. Gutpa at approximately 10:45 p.m. on Friday, February 25, 2011. Hard copies of the submission were, with the Staff's permission, not delivered until the morning of Monday, February 28, 2011. Yet by that Monday afternoon, the Staff had purportedly received authorization from the Commission to proceed against Mr. Gupta—even though there is no public record of the Commission meeting to consider thoroughly the submission Mr. Gupta was invited to, and did, submit. As a result, Mr. Gupta was deprived of the chance to have his submission scrutinized in a deliberate fashion by its intended audience—the five Commissioners.

21. Meanwhile, on Saturday, February 26, 2011 (the day after Mr. Gupta's counsel emailed the Wells submission to the Staff), a copy of the submission was turned over by the Staff to the United States Attorney's Office for use in its prosecution of Mr. Rajaratnam and then by the United States Attorney's office to Mr. Rajaratnam's counsel. In response, Mr. Rajaratnam's counsel wrote to the Chairman and four Commissioners by letter dated and hand

delivered on February 28, 2011, urging the Commission not to commence an action against Mr. Gupta before the criminal trial had been concluded but especially not on the eve of the criminal trial, set to begin on March 8, 2011. Mr. Rajaratnam's counsel cited the inevitable prejudice that would result for Mr. Rajaratnam should an action be filed right before jury selection in the criminal case, and he further cited fairness for Mr. Gupta that could only be obtained by a careful consideration by the Commissioners of the 35-page Wells submission. But, foregoing fairness in favor of disparate treatment of Mr. Gupta, the Commission quickly commenced and publicly announced the administrative proceeding against Mr. Gupta on March 1, 2011—which generated the predicted press coverage right before jury selection in Mr. Rajaratnam's criminal case. There was no urgency for bringing charges against Mr. Gupta: the Commission has not even sued Mr. Rajaratnam with respect to Goldman Sachs or Procter & Gamble, and Mr. Gupta offered to waive any defense of delay were the Commission to defer suing him until after Mr. Rajaratnam's criminal trial.

22. In inviting the Wells submission, the Commission's Staff never informed Mr. Gupta's counsel that it intended to proceed by way of an administrative proceeding rather than the traditional civil injunction action in federal court. This is contrary to the common practice as described by the Court, pursuant to which the "staff typically identifies the provisions of the federal securities law that it intends to charge, the forum in which the enforcement action will proceed (e.g., district court or administrative action), and the relief it intends to seek." *In re Initial Public Offering Securities Litigation*, No. 21 MC 92 (SAS), 2004 WL 60290, at *1 (S.D.N.Y. Jan. 12, 2004). The failure to disclose that an administrative proceeding rather than a civil injunction action in federal court was what was contemplated was significant since the Commission had previously filed all Galleon-related cases in federal court as well as just about

every other insider trading case. As a result, Mr. Gupta's counsel made a submission premised on the Commission proceeding in federal court and did not address either the appropriateness of the Commission proceeding administratively in this matter or the related retroactivity issue. Quite clearly, these issues would have been addressed if fair notice had been given.

### Claim for Relief

23. Mr. Gupta repeats and realleges the allegations of paragraphs 1-22, above.

24. By its order, the Commission has taken the position that the civil penalty provisions of Dodd-Frank can be applied retroactively against Mr. Gupta and Mr. Gupta alone. In contrast, Mr. Gupta contends that (a) Dodd-Frank provisions prospectively empowering the Commission to seek civil penalties against non-registered persons in an administrative proceeding in lieu of a plenary action in federal court cannot be applied against him and (b) the Commission has acted in bad faith and in a discriminatory manner against him.

25. By reason of the foregoing facts, an actual and justiciable controversy has arisen and now exists between Mr. Gupta and the Commission concerning (a) the retroactive effect of the civil penalty provisions of Dodd-Frank and (b) whether Mr. Gupta's due process rights have been violated. It is necessary that the legal issue as to the retroactive application of these Dodd-Frank provisions as well as the due process issue be determined by the Court.

### Jury Demand

26. Mr. Gupta hereby demands a trial by jury on all issues so triable.

WHEREFORE, Mr. Gupta prays for judgment and relief as follows:

A. A declaration that the Commission may not apply the civil penalty provisions of Dodd-Frank against Mr. Gupta administratively.

B. A permanent injunction, enjoining the Commission from pursuing its order against Mr. Gupta administratively and from otherwise violating his due process rights.

C. Such other and further relief as the Court may deem just and proper, including reasonable attorneys' fees and the costs of this action.

Dated: New York, New York
March 18, 2011

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: /s/ Gary P. Naftalis

*Of Counsel*:
Lawrence S. Robbins
ROBBINS, RUSSELL, ENGLERT,
ORSECK, UNTEREINER &
SAUBER LLP
1801 K Street, NW
Suite 411L
Washington, DC 20006
(202) 775-4501 (phone)
(202) 775-4510 (fax)
lrobbins@robbinsrussell.com

Gary P. Naftalis
Michael S. Oberman
Alan R. Friedman
David S. Frankel
Robin M. Wilcox
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100 (phone)
(212) 715-8000 (fax)
gnaftalis@kramerlevin.com
moberman@kramerlevin.com
afriedman@kramerlevin.com
dfrankel@kramerlevin.com
rwilcox@kramerlevin.com

*Attorneys for Plaintiff Rajat K. Gupta*